1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

9  | SUN PACIFIC MARKETING
10 | COOPERATIVE, INC.,

11 | Appellant,

12
13
14 | v.

15
16
17 | DIMARE FRESH, INC.,

18
19 | Appellee.

20
21
22
23 | _____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:06-cv-1404 AWI-GSA

SCHEDULING ORDER (Fed. R. Civ. P. 16)

Discovery Deadlines:

Non-Expert: July 1, 2009
Expert Disclosures : July 11, 2009
Suppl. Expert Disclosures : July 24, 2009
Expert Discovery : August 21, 2009

Motion Deadlines:
    Non-Dispositive: Sept. 4, 2009
    Dispositive: Oct. 9, 2009

Settlement Conference:
    None Scheduled

Pre-Trial Conference:
    December 3, 2009 at 8:30 a.m.
    Courtroom 2 (AWI), 8th Floor

Trial:   Feb. 2, 2010 at 8:30  a.m.
    Courtroom 2 (AWI), 8th Floor
    Two Days
    Court Trial

24 | ///
25 | ///
26
27
28

1

I.   **Date of Scheduling Conference**

February 18, 2009

II.   **Appearances of Counsel**

Katy Esquivel appeared telephonically on behalf of Appellant Sun Pacific Marketing Cooperative, Inc. ("Appellant").

Stephen McCarron appeared personally on behalf Appellee of Dimare Fresh, Inc. ("Appellee").

III.   **The Pleadings**

A.   **Summary of the Pleadings**

1.   *Appellant's Contentions:*

Appellant is a grower-shipper of table grapes, citrus, and tomatoes.  For over 10 years, Sun Pacific has grown tomatoes in Fresno and Kern counties of California.  Those tomatoes are packed and shipped from Appellant's location in Exeter, California.  Appellee DiMare purchases tomatoes from suppliers such as Appellant, repacks, and distributes them nationwide to produce wholesalers, grocery retailers, foodservice distributors, and processors.  DiMare has five California locations, plus nine other facilities located in Florida, Pennsylvania, Massachusetts, South Carolina and Texas.   Sun Pacific has been supplying tomatoes it has grown in Fresno and Kern Counties to DiMare for more than 10 years. In June, 2006, Appellant and Appellee entered into the contract called the Supply Agreement.  Pursuant to the Supply Agreement, Appellant Sun Pacific agreed to supply fresh tomatoes to Appellee DiMare during the period of time between July 17 and October 31, 2006.  Paragraph 6 of the Supply Agreement provides: Shippers' obligation.  In the event of a product shortage caused by an Act of God, Natural disaster or other incident that could not be foreseen and is beyond the control of Sun Pacific, then performance under this contract shall be excused. (emphasis added).

Appellant contends that it was known and understood by and among all parties to the Supply Agreement that the tomatoes being supplied by Sun Pacific to DiMare would be grown

2

1    by Sun Pacific on its farms locations in Kern and Fresno Counties of the San Joaquin Valley of

2    California.  In July and August, 2006, the Central San Joaquin Valley of California experienced

3    extreme heat and rain.  These heat levels and rain caused significant damage to Sun Pacific's

4    tomato crop, resulting in the loss of more than 50% of the anticipated yield of the crop.  On or

5    about September 1, 2006, Sun Pacific invoked its rights under the Act of God clause and notified

6    DiMare that it was no longer obligated to perform under the contract.

7           Having been excused from performance under the Supply Agreement on or before

8    September 1, 2006, Sun Pacific and DiMare entered into new contracts for the sale and purchase

9    of tomatoes.   Between September 7, 2006 and September 12, 2006, Sun Pacific sold to DiMare

10   Fresh $324,204.00 in tomatoes, $211,502.68 of which remains unpaid.  Appellant contends that

11   these sales are protected by the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq.

12   ("PACA").

13          The dispute between the parties was considered by the United States Department of

14   Agriculture ("USDA") in a reparation proceeding under the Perishable Agricultural Commodities

15   Act, 1930, as amended (7 USC §§ 499a et seq.) PACA Docket Number R-07-054.  Following a

16   plenary proceeding, including a two-day oral hearing, a Decision and Order was issued by

17   William G. Jenson, Judicial Officer, on August 22, 2008, in favor of Appellee DiMare Fresh, Inc.

18   ("DiMare") and against Appellant Sun Pacific finding that Appellant Sun Pacific breached the

19   contract by failing to provide Appellee DiMare the tomatoes called for in the contract, and

20   awarded reparations in the amount of $1,136,599.00, interest from November 1, 2006 at the rate

21   of 2.18% and attorneys' fees and costs in the amount of $43,630.97.  On September 19, 2008, and

22   pursuant to 7 USC §499g(c), Appellant Sun Pacific petitioned this Court for a Trial De Novo,

23   citing the following errors in the USDA's Decision and Order:

24          A.     The USDA did consider any parole evidence surrounding formation of the

25          Contract;

26          B.     The USDA only considered the subjective intent of the people who negotiated the

27

28                                               3

Contract (testimony was only presented from Sam Licato) in interpreting 6 of the Contract;

C.      The USDA did not consider the parties' actual performance of the Contract;

D.      The USDA did not consider or permit depositions to be taken;

E.      The USDA did not consider or require production of DiMare's sales records or contracts with its customers for the tomatoes in question.

*a.      Relief Sought by Appellant*

Appellant seeks an Order declaring:

(1)     that the heat wave was an unforeseen Act of God which was beyond the control of Sun Pacific,

(2)     that the heat wave caused a shortage of product from Sun Pacific;

(3)     that Sun Pacific's performance under the Supply Agreement was excused;

(4)     that Appellant is a PACA Trust beneficiary of DiMare Fresh with a valid PACA trust claim in the amount of $211,502.68; and

(5)     reversing the Decision and Order of the USDA awarding DiMare damages in the amount of $1,136,599.00, interest from November 1, 2006 at the rate of 2.18% and attorneys' fees and costs in the amount of $43,630.97.

Appellant further seeks entry of a Final Judgment in favor of Appellant and against DiMare Fresh in the amount of $211,502.68, and an order directing DiMare Fresh to immediately turn over to the Appellant, as a beneficiary of this trust, the amount of $211,502.68

*2.      Appellee's Contentions:*

DiMare, a Florida corporation with a principal place of business in Sacramento, California, is engaged in the business of buying and selling wholesale quantities of produce.  In June 2006, DiMare and Sun Pacific entered into a contract, under which Sun Pacific agreed to supply DiMare with 14 loads of tomatoes per week, at set prices, from July 17, 2006 through October 31, 2006.  There was no provision in the contract identifying where the tomatoes would

4

be grown, nor was it understood by DiMare that Sun Pacific was supplying the tomatoes from a particular farm or region.

Sun Pacific performed in accord with the contract terms until early September 2006, when Sun Pacific wrongly claimed it was excused from all future performance under the contract's Act of God clause, quoted in Section A.1 above.  Sun Pacific advised it would ship DiMare further tomatoes only if DiMare agreed to pay the current market price and waive all damage claims under the contract.  At the time of Sun Pacific's refusal to ship tomatoes under the terms of the contract, the current market price for tomatoes greatly exceeded the contract price. DiMare refused to agree to Sun Pacific's proposed rescission and damage waiver and Sun Pacific refused to supply any further tomatoes.

DiMare contends Sun Pacific was not excused from performance under the Act of God provision in the contract.  DiMare made cover purchases, and paid an additional $1,346,164.00 over the contract price for the cover loads.  As a result of Sun Pacific's breach, DiMare suffered damages in excess of $1,346,164.00.

　　　　　*a.*　　*Relief Sought by Appellee*

DiMare seeks judgment against Sun Pacific affirming the Secretary of Agriculture's Decision and Order, and awarding DiMare additional damages of $80,182.00 as cover damages, and fees and costs in this appeal proceeding under §499g(c).

**IV.**　**Factual Summary**

　　　　　*A.*　　*Uncontested Facts:*

1.　　　Appellant is a grower-shipper of table grapes, citrus, and tomatoes.

2.　　　Appellee DiMare purchases tomatoes from suppliers such as Appellant, repacks, and distributes them nationwide to produce wholesalers, grocery retailers, foodservice distributors, and processors.

3.　　　In June, 2006, Appellant and Appellee entered into the contract called the Supply Agreement.

4.      Under the terms of the contract, Sun Pacific agreed to supply DiMare with 14 loads of tomatoes per week at set prices, from July 17, 2006 through October 31, 2006.

5.      Paragraph 6 of the Supply Agreement provides:

Shippers' obligation.  In the event of a product shortage caused by an Act of God, Natural disaster or other incident that could not be foreseen and is beyond the control of Sun Pacific, then performance under this contract shall be excused.

6.      Sun Pacific provided the required tomatoes at the contract price until early September 2006.

       *B.      Contested Facts:*

1.      Whether Sun Pacific has grown tomatoes in Fresno and Kern counties of California for over 10 years.

2.      Whether Sun Pacific packed and shipped from its location in Exeter, California.

3.      Whether Sun Pacific has been supplying tomatoes it has grown in Fresno and Kern Counties to DiMare for more than 10 years.

4.      Whether the Supply Agreement is ambiguous.

5.      Whether it was known and understood by and among all parties to the Supply Agreement that the tomatoes being supplied by Sun Pacific to DiMare would be grown by Sun Pacific on its farms locations in Kern and Fresno Counties of the San Joaquin Valley of California.

6.      Whether in July and August, 2006, the Central San Joaquin Valley of California experienced extreme heat and rain.

7.      Whether the high heat levels and rain caused damage to Sun Pacific's tomato crop.

8.      The extent of the damage suffered by Sun Pacific to its tomato crop.

9.      Whether Sun Pacific advised it would ship DiMare further tomatoes only if DiMare agreed to waive all damage claims and pay the current market price.

10.     Whether DiMare made cover purchases, and paid an additional $1,346,164.00 over the contract price for the cover loads.

11.     Whether on or before September 1, 2006, Sun Pacific and DiMare entered into new contracts for the sale and purchase of tomatoes.

**V.      Legal Issues**

*A.      Undisputed Legal Issues*

1.     This Court's review of the Secretary of Agriculture's Decision and Order shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact of the Secretary of Agriculture are prima facie evidence of the facts stated therein.  7 U.S.C. §499g(c).

*B.      Disputed Legal Issues:*

1.     Whether the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq. governs interpretation of the Supply Agreement.

2.     Whether Cal. Civ. Code §1511(2) excuses Sun Pacific's performance under the Supply Agreement.

3.     Whether Cal Code Civ Proc §1856 permits the admissibility of parole evidence in order to explain or supplement the terms of the Supply Agreement.

4.     Whether Cal Code Civ Proc §1860, requires this Court to consider the circumstances under which the Supply Agreement was made in order to interpret it.

5.     Whether Cal Civ Code §1636 requires the Supply Agreement to be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

**VI.     Consent to the Magistrate Judge**

Pursuant to 28 U.S.C. § 636(c), the parties have not consented to conduct all further proceedings in this case, including trial, before the Honorable Gary S. Austin, U.S. Magistrate Judge.

*///*

7

1

### VII.   Discovery Plan and Cut-Off Date

The parties are ordered to complete all initial disclosures pursuant to Fed. R. Civ. P. Rule 26(a)(1) no later than **March 2, 2009.**   All discovery pertaining to non-experts must be completed on or before **July 1, 2009.**

The parties are directed to disclose all expert witnesses, in writing, on or before **July 11, 2009.** The parties also shall disclose all supplemental experts on or before **July 24, 2009.**  The written designation of experts shall **be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.**  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

The parties are directed to complete all expert discovery on or before **August 21, 2009.** The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions.  Experts must be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony.

### VIII.   Pre-Trial Motion Schedule

All Non-Dispositive Pre-Trial Motions, including any discovery motions, shall be filed no later than **September 4, 2009**  The Court will set a hearing date for such motions, if any.  Non-dispositive motions are heard on Fridays at 9:30 a.m., before the Honorable Gary S. Austin, United States Magistrate Judge in Courtroom 10.  **Counsel must comply with Local Rule 37-251 with respect to discovery disputes or the motion will be denied without prejudice and dropped from calendar.**

In scheduling such motions, the Magistrate Judge may grant applications for an order shortening time pursuant to Local Rule 6-142(d).  However, if a party does not obtain an order shortening time, the notice of motion *must* comply with Local Rule 37-251.

Counsel or pro se parties may appear and argue non-dispositive motions by telephone,

8

providing a written request to so appear is made to the Magistrate Judge's Courtroom Clerk no later than five (5) court days before the noticed hearing date.  In the event that more than one party requests to appear by telephone then it shall be the obligation of the moving part(ies) to arrange and originate a conference call to the court.

All Dispositive Pre-Trial Motions shall be filed no later than **October 9, 2009** and heard in Courtroom 2 before the Honorable Anthony W. Ishii.   In scheduling such motions, the parties shall comply with **Local Rules 78-230 and 56-260**.

### IX.    Pre-Trial Conference Date

The pre-trial conference will be held on **December 3, 2009, at 8:30**  a.m. in Courtroom 2 before the Honorable Anthony W. Ishii.

The parties are ordered to file a **Joint Pretrial Statement pursuant to Local Rule 16-281(a)(2).** The parties are further directed to submit a digital copy of their pretrial statement in Word Perfect X3[1] format, directly to Judge Austin's chambers by emailing it to awiorders@caed.uscourts.gov.

The parties' attention is directed to **Rules 16-281 and 16-282 of the Local Rules of Practice for the Eastern District of California**, as to the obligations of counsel in preparing for the pre-trial conference.  The Court will insist upon strict compliance with those rules.

### X.    Trial Date

The trial will be held on **February 2, 2010**, at **8:30 a.m.** in Courtroom 10 before the Honorable Anthony W. Ishii, Chief United States District Court Judge.

A.    This is a court trial.

B.    Parties' Estimate of Trial Time: Two days.

The parties' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 16-285, for preparation of trial briefs.

---

[1] If WordPerfect X3 is not available to the parties then the latest version of WordPerfect or any other word processing program in general use for IBM compatible personal computers is acceptable.

1    **XI.   <u>Settlement Conference</u>**

2         The parties do not request a settlement conference at this time.  If the parties wish to have

3    a settlement conference in the future they can contact the court via Carrie Esteves, Courtroom

4    Deputy at 559-499-5962 to arrange a mutually agreeable time.  In the event that a settlement

5    conference is scheduled, unless otherwise permitted in advance by the Court, **<u>the attorneys who</u>**

6    **<u>will try the case</u>** shall appear at the Settlement Conference **<u>with the parties</u>** and the person or

7    persons having **<u>full authority</u>** to negotiate and settle the case **<u>on any terms</u>**[2] at the conference.

8                     <u>CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT</u>

9         At least five (5) court days prior to the Settlement Conference the parties shall submit,

10    directly to Magistrate Judge Austin's chambers by email to gsaorders@caed.uscourts.gov, a

11    Confidential Settlement Conference Statement.  The statement **<u>should not be filed</u>** with the Clerk

12    of the Court **<u>nor served on any other party</u>**, although the parties may file a Notice of Lodging of

13    Settlement Conference Statement.  Each statement shall be clearly marked "confidential" with the

14    date and time of the Settlement Conference indicated prominently thereon.  The parties are urged

15    to request the return of their statements if settlement is not achieved and if such a request is not

16    made the Court will dispose of the statement.

17         The Confidential Settlement Conference Statement shall include the following:

18              A.  A brief statement of the facts of the case.

19              B.  A brief statement of the claims and defenses, i.e., statutory or other grounds

20                  upon which the claims are founded; a forthright evaluation of the parties'

21                  likelihood of prevailing on the claims and defenses; and a description of the major

22

23         [2]  Insurance carriers, business organizations, and governmental bodies or agencies whose

24    settlement agreements are subject to approval by legislative bodies, executive committees, boards
       of directors or the like shall be represented by a person or persons who occupy high executive

25    positions in the party organization and who will be directly involved in the process of approval of
       any settlement offers or agreements.  To the extent possible, the representative shall have the

26    authority, if he or she deems it appropriate, to settle the action on terms consistent with the
       opposing party's most recent demand.

27

28

1     issues in dispute.

2          C.  A summary of the proceedings to date.

3          D.  An estimate of the cost and time to be expended for further discovery, pretrial

4     and trial.

5          E.  The relief sought.

6          F.  The party's position on settlement, including present demands and offers and a

7          history of past settlement discussions, offers and demands.

8     Should the parties desire an additional settlement conference, they will jointly request one

9  of the court, and one will be arranged.  In making such request, the parties are directed to notify

10  the court as to whether or not they desire the undersigned to conduct the settlement conference or

11  to arrange for one before another judicial officer.

12     **XII.   Request for Bifurcation, Appointment of Special Master, or other Techniques**

13          **to Shorten Trial**

14          The parties have not requested bifurcation.

15     **XIII.   Related Matters Pending**

16          The parties have not identified any related matters.

17     **XIV.   Compliance with Federal Procedure**

18     The parties are expected to familiarize themselves with the Federal Rules of Civil

19  Procedure and the Local Rules of Practice of the Eastern District of California, and to keep abreast

20  of any amendments thereto.  The Court must insist upon compliance with these Rules if it is to

21  efficiently handle its increasing case load and sanctions will be imposed for failure to follow the

22  Rules as provided in both the Federal Rules of Civil Procedure and the Local Rules of Practice for

23  the Eastern District of California.

24     **XV.   Effect of this Order**

25     The foregoing order represents the best estimate of the Court and the parties as to the

26  agenda most suitable to dispose of this case.  The trial date reserved is specifically reserved for

27

28                          11

this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the Court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent status conference.

Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

Failure to comply with this order may result in the imposition of sanctions.

IT IS SO ORDERED.

**Dated:   February 25, 2009**                           **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE

12