# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN PACIFIC MARKETING COOPERATIVE, INC., <br><br> Appellant, <br><br> v. <br><br> DIMARE FRESH, INC., <br><br> Appellee. | CIV-F-06-1404 AWI GSA <br><br> ORDER RE: APPELLEE'S MOTION FOR SUMMARY JUDGMENT |

## I. History

Both Appellant Sun Pacific Marketing Cooperative, Inc. ("Sun Pacific") and Appellee DiMare Fresh, Inc. ("DiMare") are companies engaged in buying and selling wholesale quantities of produce. Both parties are licensed commission merchants and dealers under 7 U.S.C. §499a(b)(5) and (6). By contract dated June 5, 2006 ("Original Contract"), DiMare agreed to buy from Sun Pacific a set quantity of various types of tomatoes at set prices every week from July 17, 2006 through October 31, 2006. The Original Contract specified that "In the event of a product shortage caused by an Act of God, Natural disaster or other incident that could not be foreseen and is beyond the control of Sun Pacific, then performance under this contract shall be excused." By letter dated September 4, 2006, Sun Pacific notified DiMare that it was canceling performance of the Original Contract under the Act of God provision due to tomato shortages caused by heat and rain during July and August in Central California. Between September 7 and

September 12, 2006, Sun Pacific continued to sell DiMare tomatoes. Sun Pacific argues that the sales were pursuant to a new understanding between the parties with a higher sales price ("Provisional Agreement"). DiMare argues that they were made pursuant to the Original Contract, and paid Sun Pacific based on the prices contained therein. By letter dated September 12, 2006, DiMare outlined its objections to Sun Pacific's interpretation of the Original Contract. There do not appear to have been any more tomato sales by Sun Pacific to DiMare after September 12, 2006. DiMare purchased tomatoes from other companies on the open market for the remainder of the Original Contract term.

DiMare first brought suit on September 14, 2006 against Sun Pacific, alleging breach of the Original Contract and seeking specific performance (DiMare v. Sun Pacific, CIV 06-1265 AWI). This court denied DiMare's request for a temporary restraining order which sought to force Sun Pacific to sell tomatoes to DiMare in accordance with the quantity and price terms of the Original Contract. On September 25, 2006, DiMare voluntarily dismissed the suit without prejudice. On October 11, 2006, Sun Pacific filed suit against DiMare (the origin of the present case). On January 8, 2007, DiMare filed a formal reparation complaint pursuant to 7 U.S.C. §499f(a), seeking damages for breach of the Original Contract, with the USDA ("Reparation Proceeding"). The Reparation Proceeding was assigned a PACA File number, W-07-61. On April 19, 2007, The court stayed this case pending the resolution of the Reparation Proceeding. Doc. 32. The Reparation Proceeding progressed and in December 2007, the USDA held a hearing in Los Angeles, CA. William Jenson, a Judicial Officer of the USDA ruled in favor of DiMare ("Reparation Order") on August 22, 2008. DiMare was awarded $1,136,599 (plus interest at the rate of 2.18% starting from November 1, 2006 until paid) and the $300 reparation complaint filing fee.

On September 19 and 22, 2008, Sun Pacific filed a notice of appeal, petition, and bond pursuant to 7 U.S.C. §499g(c) in this court. The court examined whether jurisdiction and venue were proper and ultimately found the appeal was properly filed in Fresno. Doc. 51. On February 25, 2009, Magistrate Judge Austin set a July 1, 2009 deadline for non-expert discovery and an October 9, 2009 deadline for dispositive motions. Doc. 55, Scheduling Order. DiMare first filed

a motion for summary judgment on March 2, 2009. Doc. 56. The present motion is an amended motion filed on March 4, 2009. Doc. 60. Sun Pacific opposes the motion on the grounds that it has not propounded discovery necessary for its case; Sun Pacific asks the court to continue or deny the motion based on Fed. R. Civ. Proc. 56(f) to allow discovery. Doc. 67. The matter was taken under submission without oral argument.

**II. Legal Standards**

"Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." Burlington Northern & Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana, 323 F.3d 767, 773-74 (9th Cir. 2003). Rule 56(f) reads:

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Ninth Circuit has explained that in order to prevail on a Rule 56(f) motion, the party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). "In making a Rule 56(f) motion, a party opposing summary judgment 'must make clear what information is sought and how it would preclude summary judgment.'" Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998), citations omitted. The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004).

Factors courts have considered in granting motions pursuant to Rule 56(f) include: (1) a summary judgment motion made early in the litigation before relevant discovery could be completed; (2) discovery having been stayed by court order; (3) the case involving complex facts requiring additional discovery; (4) the material facts are within the exclusive knowledge of the

moving party; (5) discovery requests are currently outstanding to the moving party; and (6) the motion raises new and unanticipated issues. See Schwarzer, Tashima, Wagstaffe, Cal. Practice Guide: Fed.Civ.Pro. Before Trial, §14:115 (The Rutter Group 2005), citing Garrett v. San Francisco, 818 F.2d 1515 (9th Cir. 1987), DiMartini v. Ferrin, 889 F.2d 922 (9th Cir. 1989), and Weir v. Anaconda Co., 773 F2d 1073 (10th Cir. 1985). District courts have the discretion to deny further discovery "if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." Clorox Co., 353 F.3d at 1130; Cal. Union Ins. Co. v. Am. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990).

However, when a summary judgment motion is filed "so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely....[where] no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." Burlington Northern & Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana, 323 F.3d 767, 773-74 (9th Cir. 2003), citations omitted.

### III. Discussion

In this case, DiMare filed its summary judgment motion five days after the scheduling order was set. While there has been limited discovery (under rules more restrictive than the Federal Rules of Civil Procedure) as part of the Reparation Proceeding, Sun Pacific requests more. Though the case is technically an appeal, 7 U.S.C. §499g(c) "does not impose any limitation on the plaintiff's ability to submit evidence in this de novo proceeding." Genecco Produce, Inc. v. Sandia Depot, Inc., 386 F. Supp. 2d 165, 171 (W.D.N.Y. 2005). By affidavit, Sun Pacific asserts:

> 6. The U.S.D.A. refused to permit Sun Pacific to obtain any discovery from non-parties or from DiMare about its contracts for the resale of the tomatoes that are the subject of this case. Moreover, DiMare argues that it purchased cover tomatoes in order to fulfill

**4**

contracts with its customers to supply tomatoes. During the summer of 2006, many supply contracts were modified or cancelled due to extreme market conditions. In order to respond to DiMare's Motion for Summary Judgment, Sun Pacific must have the opportunity to obtain discovery regarding:
    a) Whether DiMare actually had contracts to supply tomatoes to its customers during the summer of 2006 at fixed prices;
    b) Communications within the DiMare organization regarding formation and performance of the Contract;
    c) Communications between DiMare and its customers and other third parties regarding:
        i. the industry-wide impact of the tomato shortage;
        ii. the impact of the shortage on DiMare's ability to obtain tomatoes; and
        iii. the impact of the shortage on DiMare's ability to satisfy its contracts with its customers;
    d) Whether DiMare was able to avoid liability to its customers or modify its prices based upon the shortage of tomatoes;
    e) All documentation regarding the disposition of the tomatoes Sun Pacific sold DiMare under the Contract prior to its termination including the customers sold to and prices obtained;
    f) All documentation regarding the disposition of the tomatoes DiMare purchased as cover including the customers sold to and prices obtained; and
    g) Discovery corroborating the truthfulness and veracity of Sam Licato's testimony.
7. Absent discovery, it is impossible to determine whether DiMare was relieved of any obligations under those contracts, or if DiMare was able to adjust the pricing under those contracts based upon the market.

Doc. 67, Part 2, Meuers Affidavit, at 3:8-4:6

    These proposals raise some relevant legal issues. In querying whether DiMare was able to modify its sale prices with its customers due to adverse growing conditions, Sun Pacific appears to be arguing mitigation as a defense to damages. As to underlying liability, Sun Pacific seeks to uncover communications between DiMare employees in order to discredit Sam Licato's testimony, on which the Reparation Order relies heavily. Sun Pacific alleges "The U.S.D.A. ignored all other evidence, including Mr. Licato's written correspondence to DiMare that contradicted his own testimony." Doc. 67, Part 5, Opposition, at 4:14-15. The request for discovery is rather vague, but at this early stage, it is sufficient to warrant delaying any summary judgment decision.

///

///

///

## IV. Order

DiMare's motion for summary judgment is DENIED without prejudice to allow for discovery.

IT IS SO ORDERED.

Dated: __April 15, 2009__                    __/s/ Anthony W. Ishii__
                                              CHIEF UNITED STATES DISTRICT JUDGE