1

2

3

4

5

6

7

8         **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SUN PACIFIC MARKETING                    CASE NO. 1: 06-CV-1404 AWI GSA
     COOPERATIVE, INC.,
12
                    Appellant,                 ORDER RE: APPELLEE'S MOTION FOR
13                                             PROTECTIVE ORDER AND APPELLANT'S
         vs.                                   MOTION TO COMPEL
14
     DIMARE FRESH, INC.,
15                                             (Docs. 84 and 86)
                    Appellee.
16   _____/

17   **I.  Introduction**

18
              On August 11, 2009, Appellant, Sun Pacific Marketing Cooperative, Inc., ("Sun Pacific"), filed
19
     the instant Motion to Compel which seeks responses to numerous interrogatories and requests for
20
     production of documents. (Doc. 84). On August 17, 2009, Appellee, DiMare Fresh Inc., ("DiMare"),
21
     filed the instant Motion for a Protective order in response to Sun's Pacific's Motion to Compel, as well
22
     as to recently served Notices of Depositions and a Notice of Subpoena *Duces Tecum*. (Doc. 86). On
23
     September 1, 2009, the parties filed a Joint Statement Regarding Discovery Disagreements ("Joint
24
     Statement") in compliance with Local Rule 37-251(c). (Doc. 89). Based on a review of the pleadings,
25
     the Court determined that the matter was suitable for decision without oral argument pursuant to Local
26
     Rule § 78-230 (h).  Upon consideration of the Joint Statement, Sun Pacific's Motion to Compel is
27
     granted and denied in part.  Similarly, DiMare's Motion for a Protective Order is granted and denied in
28

                                                  1

1 | part.

2 | **II. Relevant Background**

3 | This action is an appeal from a Decision and Order of the Secretary of Agriculture ("the

4 | Secretary") in a Reparation Proceeding under the Perishable Agricultural Commodities Act

5 | ("PACA"). 7 U.S.C. § 499g(c).  The Secretary of Agriculture concluded that Sun Pacific Marketing

6 | Cooperative, Inc., ("Sun Pacific") breached a contract to supply tomatoes to DiMare Fresh Inc.,

7 | ("Dimare") and awarded DiMare damages.

8 | Specifically, on June 5, 2006, the parties entered into a contract ("Original Contract") in

9 | which DiMare agreed to buy a set quantity of various types of tomatoes at set prices from July 17,

10 | 2006 through October 31, 2006 from Sun Pacific.  The contract specified that, "In the event of a

11 | product shortage caused by an Act of God, natural disaster, or other incident that could not be

12 | foreseen and is beyond the control of Sun Pacific, then the performance under this contract shall be

13 | excused." By letter dated September 4, 2006, Sun Pacific notified DiMare that it was cancelling

14 | performance of the Original Contract under the Act of God provision due to tomato shortages caused

15 | by heat and rain during July and August in Central California.  At that time, the shortage had caused

16 | the market price of tomatoes to rise to over $28.00 per carton - significantly higher than the prices in

17 | the Supply Contract (which ranged between $4.45 and $7.95 per carton).  Despite these reduced

18 | yields, DiMare contended that Sun Pacific was not excused from performance under the Original

19 | Contract.

20 | Between September 7 and September 12, 2006, Sun Pacific continued to sell DiMare

21 | tomatoes.  Sun Pacific contends that the sales were made pursuant to a new understanding between

22 | the parties at a higher sales price ("Provisional Agreement").  Di Mare argues that the sales were

23 | made pursuant to the Original Contract and paid Sun Pacific based on the prices contained therein.

24 | No other tomato sales were made after September 12, 2006. DiMare entered into contracts to

25 | purchase tomatoes from other companies ("cover tomatoes" or "cover contracts") on the open market

26 | for the remainder of the Original Contract term at a cost in excess of $1.1 million dollars.

27 | DiMare first brought suit on September 14, 2006, against Sun Pacific alleging breach of

28 | contract and seeking performance.  DiMare v. Sun Pacific, CIV 06-1265 AWI.  On September 25,

1   2006, DiMare voluntarily dismissed the suit without prejudice.

2           On October 11, 2006, Sun Pacific filed suit against DiMare in the instant action.  Sun

3   Pacific's operative complaint has five loosely organized counts : 1) declaratory relief that the

4   weather events during the summer of 2006 qualify under the Act of God provision in the Original

5   Contract;  2) violation of duty to pay promptly under PACA;  3) breach of the Provisional

6   Agreement; 4) declaratory relief that receipt of tomatoes under the Provisional Agreement created a

7   PACA trust; and 5) enforcement of payment through the PACA trust.  DiMare filed an answer and

8   counterclaim in this case on December 5, 2006.  The counterclaim alleges both breach of the

9   Original Contract and PACA causes of action for failure to deliver in accordance with the terms of

10  the contract.

11          On January 8, 2007, DiMare filed a formal Reparation Complaint pursuant to 7 U.S.C. §

12  499f(a), seeking damages for breach of the original contract, with the United States Department of

13  Agriculture ("USDA").  On April 19, 2007, the instant action was stayed pending the resolution of

14  the Reparation Proceeding. The Reparation Proceeding was commenced on August 22, 2008.

15  William Jenson, a Judicial Officer for the USDA, ruled in favor of DiMare and awarded it

16  $1,136,599 (plus interest at the rate of 2.18% starting from November 1, 2006 until paid) and the

17  $300 Reparation Complaint filing fee.  On September 19 and 22, 2008, Sun Pacific filed a notice of

18  appeal, petition, and bond pursuant to 7 U.S.C. § 499g(c) in this court. The parties are contesting the

19  scope of discovery permitted as part of the review of the Secretary's decision.

20  **III.  The Parties' Motions**

21          Sun Pacific's Motion to Compel seeks to obtain substantive responses to Interrogatories

22  Numbers  2, 3, 5, and 15, as well as Production of Document Requests Numbers 1, and 5 through

23  34.[1]  DiMare's Motion for Protective Order seeks to: 1) quash subpoena duces tecum to DiMare's

24  customers which seek to obtain documents regarding pricing and contracts between DiMare and its

25

26  ───────────────

27          [1] The Court notes that the Notice of Motion and Motion to Compel filed on August 11, 2009 seeks to compel
    different items that those outlined in the Joint Statement.  Since the Joint Statement is more recently filed and more
28  comprehensive, the Court presumes these are the items Sun Pacific is seeking and limits its ruling to those items.

customers during 2006,[2] 2) prohibit the deposition requests of three of the corporate representatives

of the customers listed above, 3) limit the depositions of DiMare representatives so they do not

include questions regarding the disposition of the cover tomatoes, and 4) that Sun Pacific's Motion

to Compel be denied as to any information or documents regarding the disposition of the cover

tomatoes.

## IV.   Discussion

### A.   The Scope of Discovery

Fed.R.Civ.P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, non privileged, that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
> Id.

Thus, discovery is appropriate of any matter relevant to the subject matter involved in the action. "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd., 179 F.R.D 281, 283 (C.D. Cal. 1998); Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990)*.

### B.  Protective Order Standards

DiMare seeks a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person

---

[2] These customers include, Wal-Mart Stores, Inc., the Kroger Co. d/b/a Wesco Foods Company (Fresno Division), Ready Pac Produce, Inc., Jack in the Box, Inc., The Kroger Co., d/b/a Wesco Foods Company (Sacramento Division), Oceanside Produce Inc., Diversified Restaurant Systems, Inc., Apio Inc., and San Joaquin Tomato Growers, Inc.

from annoyance, embarrassment, oppression, or undue burden or expense . . ..

Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery.  *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. See *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective order the party must make a particularized showing of good cause with respect to any individual document).  In determining whether good cause exits for the protective order, the Court must balance the interests in allowing discovery against the relative burdens to the parties and non parties.  *In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623 (C.A. Okl. 1982).

With these protective order standards in mind, the Court turns to DiMare's objections and its Motion for Protective Order.

        DiMare's Position

DiMare contends that the items sought by Sun Pacific related to the disposition of the "cover tomatoes" is irrelevant to this litigation because under California law, if a buyer makes cover purchases in response to a seller's breach of contract, that buyer may recover the difference between the cost of the cover contract and the contract price from the seller.  This gives the buyer the benefit of the bargain. What the seller chooses to do with that bargain is not relevant to the determination of damages.  DiMare relies on *KGM Harvesting Co., v. Fresh Network*, 36 Cal. App 4th 376, 389, 42 Cal Rptr 2d. 286 (1995) in support of this argument.  Additionally, DiMare contends that the discovery will cause DiMare and its customers annoyance, embarrassment, oppression, and undue burden and expense.

        Sun Pacific's Position

Sun Pacific argues that DiMare has not met the burden of showing that specific harm or prejudice will result if no protective order is granted.  Moreover, the requested information is relevant to issues

1    of liability.  Specifically, Sun Pacific contends that the information is necessary to determine whether

2    there was a shortage under the contract, whether Sun Pacific breached the contract, or whether there was

3    a modification of the contract.  Sun Pacific also argues that the requested information is relevant to

4    damages because there was never any discovery in the U.S.D.A. proceedings regarding whether DiMare

5    ever purchased the cover tomatoes in order to fulfill its contract, what profits DiMare expected to make,

6    or whether DiMare was excused from preforming some or all of its obligations under existing contracts.

7    Sun Pacific contends that it needs this information so that damages can be properly calculated.

8          **Ruling**

9          <u>DiMare's Request for Protective Order</u>

10         DiMare has requested a protective order to: 1) quash subpoenas duces tecum, 2) prohibit the

11   deposition requests of DiMare's customers, and 3) to preclude any questions of DiMare representatives

12   and other discovery requests regarding the cover tomotes. The Court is not persuaded by DiMare's

13   argument that Sun Pacific's discovery requests surrounding the cover tomatoes and damages is not

14   relevant to these proceedings. Sun Pacific argues that when  a buyer has a resale contract and the

15   damages calculated would result in a windfall to the buyer, those damages can be limited under U.C.C

16   § 1-106.  In particular, Sun Pacific contends that if DiMare purchased cover tomatoes in order to fulfill

17   its contracts with its customers and DiMare modified, or was excused from performing these contracts,

18   DiMare's damages would be significantly reduced or eliminated, thereby limiting the damages claim.

19         In reply, DiMare has done nothing more than state that *KMG Harvesting Co. v. Fresh Network*

20   discusses Sun Pacific's arguments regarding damages and explains why the discovery Sun Pacific seeks

21   is irrelevant.  DiMare has failed to explain how *KMG Harvesting Co. v. Fresh Network* specifically

22   relates to the instant proceedings, or how that case undermines Sun Pacific arguments that § 1-106 of

23   the U.C.C. applies to these proceedings.

24         Section 1-106 of the U.C.C. provides as follows :

25       The remedies provided by this Act shall be liberally administered to the end that the
     aggrieved party may be put in as good a position as if the other party had fully performed
26       but neither consequential or special nor penal damages may be had except as specifically
     provided in this Act or by other rule of law.
27

28         Moreover, § 2-712 of the U.C.C. provides that after a breach, the buyer may enter into "cover"

6

1  contracts to purchase goods in substitution for those due from the seller.  UCC § 2-712 (1).  Under these

2  circumstances, the amount of the damages is the difference between the cost of the cover and the

3  contract price together with any incidental or consequential damages. UCC § 2-712 (2); *See also*,

4  California Uniform Commercial Code § 2712(2).

5          Here, the parties are disputing whether there was a breach of contract, the extent of any damages,

6  as well as which law related to damages will apply.  Although DiMare has cited *KMG Harvesting Co.*

7  *v. Fresh Network,* this is a decision issued by the Fourth District California Court of Appeal.  Whether

8  this case will ultimately be binding in this litigation is yet to be determined. Accordingly, for purposes

9  of discovery, damages regarding the cost of the cover tomatoes, and whether DiMare was able to pass

10  those costs on to its customers are all relevant at this stage of the proceedings.

11          In addition, information related to the cover tomatoes and DiMare's contracts with its other

12  customers is also relevant to determining DiMare's intent when it negoiated the contract, as well as

13  whether there was any modification to the contract.  Sun Pacific argues that the parties re-negotiated the

14  contract during September 7 and September 12, 2006.  Information regarding DiMare's contracts with

15  their customers during this time period would be relevant to determine whether DiMare believed the

16  price of the tomatoes with Sun Pacific had changed from the Original Contract.

17          Finally, the court agrees with Sun Pacific's argument that the information with regard to

18  contracts DiMare made with customers is relevant to determining whether DiMare renegotiated  its

19  prices as a result of the heat wave.  If DiMare did so, it would undermine DiMare's contention that Sun

20  Pacific erroneously instituted the Act of God Clause in the contract.

21          As the resisting party, Defendant has the burden or clarifying, explaining, or supporting its

22  objections. *Blankenship v. Hearst Corp.*, 519 F. 2d 418, 429 (C.A. Cal 1975); *Keith H. V. Long Beach*

23  *Unified Sch. District*, 228 F.R.D. 652, 655-656 (C.D. Cal. 2005).  DiMare has failed to do so.  As Judge

24  Ishii noted in his order denying DiMare's Motion for Summary Judgment, 7 U.S.C. § 499(g) "does not

25  impose any limitation on Plaintiff's ability to submit evidence in this de novo proceeding." *Genecco*

26  *Produce, Inc., Sandia Deport, Inc.,*. 386 F. Supp. 2d 165, 171 (W.D.N.Y 2005); Doc. 75 at pg. 4.

27  Notably, Judge Ishii held that additional discovery in this case was warranted. Doc. 75.

28          Here, the parties are disputing whether there was a breach of contract, the extent of any damages,

as well as which law related to damages will apply.  These are issues that will be litigated in this course of these proceedings.  Relevancy is "construed broadly to encompass any matter that bears on, *or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case*." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978).  (Emphasis added). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Ca. 2005) (*quoting Oakes v. Halvorsen Marine Ltd*, 179 at 281.).  "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at trial. *Id.*

Although the court finds the requested materials relevant, it does note that information related to the contracts between DiMare and its customers, as well as information related to the cover contracts may include confidential business information or trade secrets. "Confidential business information has long been recognized as property." *Carpenter v. United States*, 4848 U.S. 19, 26, 108 S. Ct. 316, 320 (1987).  Fed. R. Civ. P. 26(c)(G) provides that a court may prevent the release of trade secrets or other confidential information, or limit the release of this information in a specific way.  Although DiMare has requested that Sun Pacific be completely precluded from obtaining the requested information, it has not made the requisite showing. Therefore, DiMare's requests to quash the subpoenas, and limit deposition testimony and other discovery requests with regard to cover tomatoes are therefore denied. However, given the confidential nature of the material, coupled with the fact that this information involves non-parties, the requested information shall be subject to protective order such that any information is limited to the parties' counsel, experts, consultants, their respective staff and/or employees, court reporters and others agreed upon by the parties. Fed. R. Civ. P Rule 26(C)(1)(B). Moreover, any documents submitted to the court shall be filed under seal. The parties shall meet and confer and submit a proposed stipulated protective order for the court's approval to formalize these provisions.

Notwithstanding the above, some of Sun Pacific's interrogatory requests and requests for production of documents are objectionable. Accordingly, DiMare's obligation to respond to each of Sun Pacific's specific requests is limited as set forth below.   The discovery requests have been grouped

together because of the commonality of issues and/or the similarity of the objections.

## C.  Interrogatory Standards

Functions of interrogatories include obtaining evidence, information which may lead to evidence and admissions, and to narrow issues to be tried.  *United States v. West Virginia Pulp and Paper Co., 36 F.R.D. 250, 252* (S.D.N.Y. 1964).  The party answering interrogatories must furnish "such information as is available to the party." F.R.Civ.P. 33(a).  F.R.Civ.P. 33(b)(1) requires an interrogatory to be answered "separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."  An "evasive or incomplete . . . answer, or response is to be treated as a failure to . . . answer, or respond." F.R.Civ.P. 37(a)(3).  Further, the responding party has a duty to supplement any responses if the information sought is later obtained or the response provided needs correction. Fed. R. Civ. P. 26(e)(A).

### 1.  Sun Pacific's Disputed Interrogatories

**Interrogatory No. 2**.

Identify all people who have any direct knowledge of the facts and circumstances relating to the subject matter of this lawsuit.  For each, include a description of the subject matter of that person's knowledge.

**Interrogatory No. 3**

For each and every oral or written communication between Sun Pacific and DiMare related to the negotiation, formation, execution, performance, breach or termination of the Contract.  For each, identify

    a.    The date of the communication;
    b.    The form of the communication (oral or written);
    c.    If the communication was written:

        1.    Identify the author of the communication;
        2.    Identify each person who possesses the original and all copies of the communication;
        3.    Please state the contents of the communication verbatim, or attach a copy of said communication hereto.

    d.    If the communication was oral:

        1.    State whether the communication was in person, over the telephone or by other

mechanical means;
2.    Identify all parties to the communication;
3.    Identify each person witnessing all or part of the communication;
4.    State in detail the substance of the communication.
5.    Identify all documents evidencing, referring, or relating to the communication, and identify each person who has those documents.

**Interrogatory No. 5**

Identify all people with whom Sam Licato communicated regarding the formation, negotiation, performance, termination or breach of the Contract.   For each, include the date(s) of the communication(s), the method of such communication (i.e.: phone call, e-mail, letter) and a description of the content of the communication.

**Objections:** DiMare argues that all of the information requested in these interrogatories was previously submitted as part of the USDA proceeding and are contained in the hearing transcript of the proceeding before the USDA.  DiMare has no additional information. Sun Pacific argues that DiMare's responses are non-responsive and contains no substantiI've response.

**Ruling:** This case has already been extensively litigated.  DiMare provided discovery in the U.S.D.A. proceeding and Plaintiff has access to the transcript of the proceedings.  Pursuant to Fed. R. Civ. P. 33(d) if the answer to an interrogatory may be determined by examining a party's business records and the burden of deriving the answer will be substantially the same for either party, the responding party may specify the records to be reviewed and give the party a reasonable opportunity to examine the records.  DiMare has represented that no other information exists.  Therefore, this  Court denies the Motion to Compel responses to interrogatories 2, 3, and 5.  However, if it has not already done so, DiMare shall certify its response pursuant to Rule 26(g) indicating that the response is complete and correct as of the time it was made and no other information exists.

**Interrogatory No. 15**

List all computer equipment used by Paul DiMare during the 2006 Tomato Season in connection with performing work for DiMare, regardless of whether that equipment was owned by DiMare.  Include a description of the equipment, the serial number, the names of all persons who used that equipment, the dates used, and the current whereabouts of that equipment.

**Objection**: DiMare objects on the grounds that the request is overly broad, unduly vague,

10

1    ambiguous, burdensome, and oppressive.  DiMare  further objected on the basis that the information is

2    irrelevant and the request seeks communications or information which is commercially sensitive

3    information or contains trade secrets entitled to protection under Rule 26(c)(1)(G).

4         Sun Pacific argues that identification of the computer equipment utilized by Paul DiMare in his

5    role as president of the company imposes no burden on DiMare, nor is it is commercially sensitive.

6    Furthermore, Sun Pacific contends that DiMare has not met its burden to show that documents are

7    confidential or contain proprietary information.

8         **Ruling:** This Court finds that DiMare's objections are simply attempts to avoid answering this

9    interrogatory.  Identification of the computer equipment utilized by Mr. DiMare in connection with his

10   role as President of DiMare imposes no burden upon DiMare, nor does this disclosure contain

11   commercially sensitive information.   Sun Pacific's Motion to Compel is granted with regard to this

12   interrogatory.

13                          **D. Request for Production Standards**

14        Fed. R. Civ. P. 34(b) requires that a written response to a request for production either states

15   that inspection and related activities will be permitted as requested, or states an objection to the

16   request, including the reasons.  A party is obligated to produce all specified relevant and

17   nonprivileged documents or other things which are in its "possession, custody, or control" on the date

18   specified in the request.  Fed. R. Civ. P. 34(a).

19                     **2.  Sun Pacific's Disputed Production of Documents**

20   **Production of Documents No. 1**

21        Any and all documents identified in or relied upon in preparing your responses to Plaintiff's

22   First Set of Interrogatories served in this case.

23        **Objections:** DiMare contends that any documents identified in or relied upon in preparing

24   responses to Plaintiff's First Set of Interrogatories served in this case were produced in the USDA

25   proceeding.

26        Sun Pacific argues that it is entitled to individualized and complete responses to each request.

27        **Ruling :** Sun Pacific's Motion to Compel a response to this request for production of

28   documents is denied.   "A party must produce documents as they are kept in the usual course of

business *or* must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(I) (emphasis added).  Thus, a party need not identify which document(s)/items are being produced in response to a specific request for production, as long as the documents are produced in the same state as they are kept in the usual course of business.  Here, DiMare's response is sufficient.  However, DiMare shall certify its response pursuant to Rule 26(g) as outlined above if it has not already done so.

**Production of Documents No. 5.**

All documents reflecting, referring to or describing the negotiation of the 2005 contract.

**Production of Documents No. 6.**

All documents reflecting, referring to or describing the formation of the 2005 contract.

**Objections:**  DiMare argues that it has no responsive documents in its possession, custody and control regarding both of these requests.

Sun Pacific argues that it is entitled to individualized and complete responses to each request.

**Ruling:** DiMare's response contained in the Joint Statement for both of these requests is sufficient. No further response is necessary. Sun Pacific's Motion to Compel is denied with regard to request for production of documents nos. 5 and 6.

**Production of Documents No. 7.**

All documents reflecting, referring to, or describing the negotiation of the Contract.

**Production of Documents No. 8.**

All documents reflecting, referring to, or describing the formation of the Contract.

**Production of Documents No. 9.**

All documents reflecting, referring to, or describing communications by, between, including, involving or to DiMare related to the Contract.

**Production of Documents No. 10**

Any and all documents drafted by Sam Licato reflecting, referring to or describing the formation, negotiation, performance, termination or breach of the Contract.

**Objections:** DiMare argues that these documents were previously produced to Sun Pacific by way of subpoena in the USDA proceeding. DiMare has no other responsive documents and relies on

1 | its argument made in Request No. 1.

2 |      Sun Pacific argues that it is entitled to individualized and complete responses to each request.

3 |      **Ruling:** Sun Pacific's Motion to Compel responses to request for production of documents

4 | nos. 6-10 is denied.  The court adopts the reasoning outlined request no. 1.

5 | **Production of Documents No. 11**

6 |      Any  and all documents reflecting, referring to, or describing communications between

7 | DiMare and any of its customers regarding the 2006 Tomato Season.

8 | **Production of Documents No. 12**

9 |      Any and all documents reflecting, referring to, or describing communications between DiMare

10 | and any third parties regarding the 2006 Tomato Season.

11 | **Production of Documents No. 13**

12 |      Any and all documents reflecting, referring to, or describing communications between DiMare

13 | and any of its customers regarding DiMare's ability - or inability- to obtain tomatoes during the 2006

14 | Tomato Season.

15 | **Production of Documents No. 14**

16 |      Any and all price lists sent by DiMare to any customer between August 29 and November 1,

17 | 2006.

18 | **Production of Documents No. 15**

19 |      Any and all documents reflecting, referring to, or describing communications between DiMare

20 | and any third parties regarding DiMare's ability - or inability - to obtain tomatoes during the time

21 | period during the 2006 Tomato Season.

22 |      **Objections :** DiMare objects to these requests on the grounds that they are overly broad,

23 | unduly vague, ambiguous, and burdensome and oppressive.  DiMare further objects on the basis that

24 | it is not calculated to lead to the discovery of admissible evidence given the state of the law on cover

25 | contracts.  Moreover, DiMare argues that the request seeks communications or information which is

26 | commercially sensitive information or trade secrets entitled to protection under Rule 26(c)(1)(G).

27 |      Sun Pacific counters that the information is relevant for purposes of determining whether

28 | DiMare believed that the heat wave was foreseeable, was an Act of God, and whether this cause a

1  product shortage.  Furthermore, Sun Pacific contends that DiMare has not met its burden to show that
2  documents are confidential or contain proprietary information.

3       **Ruling:**  DiMare has failed to demonstrate that there is merit to its general and boilerplate
4  objections that the request is overly broad, unduly vague, ambiguous, burdensome and oppressive.
5  Such objections are insufficient to meet DiMare's burden.  *Burlington N. & Santa Fe Ry Co. v.*
6  *United States Dist. Ct. of Mont*., 408 F. 3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate
7  objections or blanket refusals inserted into a response to a Rule 34 request for production of
8  documents are insufficient to assert a privilege.); *A. Farber & Partners Inc., Garber*, 234 F.R.D. 186,
9  188 (C.D. Cal. 2006); *see also, McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F. 2d 1482,
10  1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome, oppressive,
11  and irrelevant are insufficient to meet the objecting party's burden of explaining why discovery
12  requests are objectionable).  The court finds these requests are relevant and discoverable for reasons
13  previously outlined.  Sun Pacific's Motion to Compel responses to request for production of
14  documents nos. 11-15 is granted.  Any responses to this request shall be subject to a stipulated
15  protective order previously described to protect against the dissemination of any commercially
16  sensitive information or trade secret material

17  **Request for Production No. 16**

18       Any and all documents reflecting, referring to or describing the substitution of 5x6 tomatoes
19  for 5x5 tomatoes under the Contract.

20       **Objections:** DiMare argues that it has no responsive documents in its possession, custody and
21  control regarding both of these requests.

22       Sun Pacific argues that it is entitled to individualized and complete responses these requests.

23       **Ruling:** DiMare's response contained in the Joint Statement for this request is sufficient. No
24  further response is necessary. Sun Pacific's Motion to Compel is denied with regard to request for
25  production of documents No. 16.

26  **Request for Production No. 17**

27       Any and all documents reflecting that the USDA inspections contained within CX-18 were
28  faxed to Tom Gilardi or Sun Pacific.

1    **Objections:** DiMare objects to this request on the basis that the above transaction is no longer

2  a subject of this litigation because Sun Pacific did not appeal this portion of the order.

3    In reply, Sun Pacific argues that the transactions in question are still an issue in both the

4  appeal of the Reparation Order, as well as in Sun Pacific's Complaint.  Specifically, Sun Pacific

5  contends that DiMare failed to pay for $324,204.00 in tomatoes shipped to DiMare between

6  September 7, 2006 and September 12, 2006, after termination of the Supply Contract.  DiMare's Sam

7  Licato testified that Sun Pacific was notified that the tomatoes supplied under these invoices were not

8  the quality specified by DiMare and faxed copies of federal inspections of the tomatoes conducted by

9  the USDA.

10    DiMare counters by arguing that it has no such documentation showing that the inspections

11  were faxed to Sun Pacific.

12    **Ruling:** This request is relevant to the proceedings.  Sun Pacific's Motion to Compel with

13  regard to request for production of documents no. 17 is granted.  DiMare shall produce any relevant

14  documents in its possession, custody, or control.

15  **Request for Production No. 18**

16    Any and all documents reflecting, referring to or describing DiMare's contracts for the

17  purchase of tomatoes from the following suppliers in 2006:

18    a)    New Image Brokerage Co.

19    b)    Oceanside Produce, Inc.

20    c)    San Joaquin Tomato Growers, Inc.

21    **Objections:** DiMare objects on the grounds that it is overly broad, unduly vague, ambiguous,

22  burdensome and oppressive.  DiMare further objects to this request on the grounds that it is not

23  calculated to lead to the discovery of admissible evidence and seeks information which is

24  commercially sensitive information or contains trade secrets under Rule 26(c)(1)(G).

25    Sun Pacific contends that the contracts DiMare entered into with its suppliers in the summer

26  of 2006 may have provisions similar to those found in the Supply Contract, and may be relevant to the

27  issue of DiMare's interpretation of the shortage provision in the summer of 2006.

28    **Ruling:** The Court finds that this request is too broad.  The contracts DiMare had with other

1  supplies is too remotely related and irrelevant to the issues raised in this litigation.  Sun Pacific's

2  Motion to Compel reponses to request for production no. 18 is denied.

3  **Request for Production No. 19**

4      Any and all documents related to the sale of the tomatoes purchased by DiMare under the

5  contracts in Request 18.

6  **Request for Production No.  20**

7      Any and all documents reflecting, referring to or describing contracts where DiMare was

8  obligated to supply 5x5 tomatoes to Wal-Mart or any other customer during the 2006 Tomato Season.

9  **Request for Production No. 21**

10     Any and all documents reflecting, referring to or describing contracts where DiMare was

11  obligated to supply Roma tomatoes to Wal-Mart or any other customer during the 2006 Tomato

12  Season.

13   **Request for Production No. 22**

14     Any and all documents reflecting, referring to or describing the existence and terms of the

15  Tomato Supply Contracts during the 2006 Tomato Season.

16  **Request for Production No. 23**

17     Any and all documents reflecting, referring to, or describing DiMare's ability to perform under

18  the Tomato Supply Contracts.

19  **Request for Production No. 24**

20     Any and all documents reflecting, referring to, or describing the modification of the price term

21  of the Tomato Supply Contracts.

22  **Request for Production No. 25**

23     Any and all documents reflecting, referring to, or describing the modification of the Tomato

24  Supply Contracts.

25  **Request for Production No. 26**

26     Any and all documents reflecting, referring to, or describing the termination of the Tomato

27  Supply Contracts.

28  ///

16

**Request for Production No. 27**

Any and all documents reflecting, referring to or describing the disposition of the tomatoes sold by Sun Pacific to DiMare during the 2006 Tomato Season, including the customers sold to, the invoice price, and payment amount.

**Request for Production No. 28**

Any and all documents reflecting, referring to or describing the disposition of tomato purchases identified in CX-13, including the customers that DiMare sold each load to, including the customers sold to, the invoice price, and payment amount.

**Request for Production No. 29**

The invoices, bills of lading, and proof of payment for all purchases identified in CX-13.

**Request for Production No. 30**

Any and all documents reflecting, referring to or describing the written contracts between DiMare and

    a)    Subway;
    b)    Jack in the Box;
    c)    Kroger;
    d)    Ready Pac;
    e)    Apio
    f)    Wal-Mart

for the sale of tomatoes during the 2006 Tomato Season.

**Production of Document Request 31**

Any and all documents reflecting, referring to or describing written contracts for the purchase or sale of tomatoes that DiMare is a party to that contain an Act of God provision.

**Objections:** Dimare objects to these requests on the grounds that they are overly broad, unduly vague, ambiguous, and burdensome and oppressive.  DiMare further objects to these requests on the grounds that it is not calculated to lead to the discovery of admissible evidence based on its argument regarding the law on damages and cover tomatoes.  Finally, DiMare objects to these requests to the extent they seek communications or information which is commercially sensitive information or trade secrets entitled to protection under Rule 26(c)(1)(G).

Sun Pacific contends that these requests are relevant in determining the interpretation of the

1 contract, as well as whether DiMare believed that the heat wave was foreseeable, was an Act of God,

2 and whether this caused a product shortage.  Finally, these requests are necessary to obtain

3 information related to DiMare's cover contracts that are relevant to damages.

4       **Ruling:** With respect to requests for production of documents nos. 19-21 and 23-30, DiMare

5 has failed to demonstrate that there is merit to its general and boilerplate objections that it is overly

6 broad, unduly vague, ambiguous, burdensome and oppressive.  As previously outlined, such

7 objections are insufficient to meet DiMare's burden.  The Court finds these requests are relevant and

8 discoverable for reasons previously outlined.  Therefore, Sun Pacific's Motion to Compel responses

9 to requests nos. 19-21 and 23-30 is granted. Any responses to these requests shall be subject to a

10 stipulated protective order previously described.   To the extent that DiMare has already supplied the

11 information of requested documents No. 29 it shall so indicate with a certification pursuant to Rule

12 26(g).

13       Finally, the Court agrees with DiMare that requests for production nos. 22 and 31 are too

14 broad.  Accordingly, Sun Pacific's Motion to Compel responses to requests for production of

15 documents nos. 22 and 31 is denied.

16 **Production of Document Request 32**

17       A copy of the phone bill and records of all incoming and outgoing calls for all telephone

18 numbers used by Sam Licato during the 2006 Tomato Season.

19 **Production of Document Request 33**

20       A copy of the phone bill and records of all incoming and outgoing calls for all fax numbers

21 used by Sam Licato during the 2006 Tomato Season.

22 **Production of Document Request  34**

23       A copy of the phone bill and records of all incoming and outgoing calls for all mobile or cell

24 phone numbers used by Sam Licato during the 2006 Tomato Season.

25       **Objections.**  DiMare objects to these requests on the grounds that they are overly broad,

26 unduly vague, ambiguous, and burdensome and oppressive and on the grounds that they are not

27 calculated to lead to the discovery of admissible evidence.  Defendant further objects to these requests

28 to the extent they seek communications or information which is commercially sensitive information

1   or trade secrets entitled to protection under Rule 26(c)(1)(G).

2        Sun Pacific contends that DiMare has not met its burden to show that documents are

3   confidential or contain proprietary information.   Finally, Sun Pacific claims that the information is

4   necessary to corroborate Sam Licato's testimony that he communicated key information to

5   representatives of Sun Pacific telephonically and by fax, including DiMare's refusal to accept Sun

6   Pacific's termination of the Supply Contract and DiMare's refusal to pay market prices for the

7   tomatoes despite signing sales order sheets reflecting the market.

8        **Ruling:** This request is too broad in time.  It appears that most of the communication

9   regarding the termination of the Original Contract and the Provisional Contract occurred between

10  October 4 through October 14.  Sun Pacific's Motion to Compel responses to requests for production

11  nos. 32, 33, and 34 is granted in part subject to this time limitation.

12                          <u>**CONCLUSION AND ORDER**</u>

13       For the reasons discussed above, this Court orders the following:

14       1) DiMare's Motion for Protective Order is GRANTED  and DENIED in part as set forth in this

15  order;

16       2) Sun Pacific's Motion to Compel is GRANTED and DENIED in part as set forth in this order;

17       3) Pursuant to the stipulation of the parties filed on August 21, 2009 (Doc. 88), DiMare shall

18  provide responses to the discovery requests as outlined above within forty-five days of this order.  The

19  deadline for non-expert discovery shall be extended for this purpose only until **January 20, 2010;**

20       4) The parties are advised that the protective order outlined in this order relating to the disclosure

21  of information and documents is to be used as a guideline.  The parties are expected to negotiate in good

22  faith and submit a stipulated protective order for the Court's approval **within five days** of this order; and

23       5) The Amended Scheduling Conference Order filed on August 11, 2009 is vacated. (Doc. 85).

24  Within ten days, the parties shall submit a stipulation setting forth reasonable dates for expert disclosure,

25  supplemental expert disclosure, the filing of dispositive motions, the pretrial conference, and the trial.

26       IT IS SO ORDERED.

27  **Dated:   December 3, 2009                      /s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE
28