UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUN PACIFIC MARKETING COOPERATIVE, INC., | ) ) ) | CIV-F-06-1404 AWI GSA |
| Appellant, | ) ) | ORDER RE: MOTIONS FOR RECONSIDERATION AND |
| v. | ) ) | MOTION FOR ATTORNEY'S FEES AND COSTS |
| DIMARE FRESH, INC., | ) ) | |
| Appellee. | ) ) | (Docs. 166, 167, 168, and 169) |

### I. History

Both Appellant Sun Pacific Marketing Cooperative, Inc. ("Sun Pacific") and Appellee DiMare Fresh, Inc. ("DiMare") are companies engaged in buying and selling wholesale quantities of produce. DiMare agreed to buy from Sun Pacific a set quantity of various types of tomatoes at set prices every week from July 17, 2006 through October 31, 2006 ("Contract"). The Contract specified that "In the event of a product shortage caused by an Act of God, Natural disaster or other incident that could not be foreseen and is beyond the control of Sun Pacific, then performance under this contract shall be excused." That summer, the San Joaquin Valley of California, where Sun Pacific's growing facilities were located, experienced a heat wave that negatively affected tomato crops. Sun Pacific sought to invoke the Act of God clause. DiMare disagreed and insisted upon performance of the Contract. The parties filed suit in Fresno and filed a formal reparation complaint pursuant to PACA provision 7 U.S.C. §499f(a) with the USDA. The parties presented their cases before William Jenson, a Judicial Officer of the USDA,

at a hearing in Los Angeles, CA. Judge Jenson concluded there was no product shortage and awarded DiMare $1,136,599 plus interest, fees, and costs.

Sun Pacific appealed the decision to this court. A de novo bench trial was held in accord with PACA procedure. The court issued Findings of Fact and Conclusions of Law ("FOFCOL"), finding that Sun Pacific breached the Contract and was liable to DiMare for damages. Though Sun Pacific asserted that there was a product shortage that excused performance, there was insufficient evidence to support that conclusion. DiMare provided invoice records that show $1,225,362 worth of damages. However, DiMare did not account for purchases made at prices below Contract prices; these savings must be deducted from damages. In the absence of an accounting for these savings, the court cut damages by 20%. The court awarded 2.18% prejudgment interest as requested by DiMare.

Both parties now seek reconsideration of the FOFCOL under Fed. Rules Civ. Proc 52(b) and 59(a)(2). Sun Pacific seeks a finding that a product shortage existed, excusing performance under the contract. Doc. 169. DiMare seeks an interest rate of 10% under California law and a difference calculation of the savings from cover. Doc. 166. Additionally, DiMare seeks attorney's fees and costs. Doc. 167.

**II. Legal Standards**

Fed. Rule Civ. Proc. 52(b) states "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings - or make additional findings - and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. Rule Civ. Proc. 59(a)(2) states "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones and direct the entry of a new judgment."

Motions under Fed. Rule Civ. Proc. 52(b) are "designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing." R.C. Fischer and Co. v. Cartwright, 2011 U.S. Dist. LEXIS 139388, *13 (N.D. Cal. Dec. 5,

2011), citing Davis v. Mathews, 450 F. Supp. 308, 318 (E.D. Cal. 1978).  Fed. Rule Civ. Proc. 52(b) motions are appropriately granted in order to correct manifest errors of law or fact or to address newly discovered evidence or controlling case law. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219-20 (5th Cir. 1986).  A motion to amend a court's factual and legal findings is properly denied where the proposed additional facts would not affect the outcome of the case or are immaterial to the court's conclusions. Weyerhaeuser Co. v. Atropos Island, 777 F.2d 1344, 1352 (9th Cir. 1985).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

### III. Discussion

**A. Product Shortage**

In the FOFCOL, the court defined "a 'product shortage' of a category of tomato when Sun Pacific did not pack enough to fulfill the Contract quantities." Doc. 165, FOFCOL, 11:22-23. Sun Pacific, as the party asserting the product shortage, had the burden of proof.  Sun Pacific produced its pack records, which represent "the quantity available to ship...in hindsight what was actually packed." Doc. 169, Sun Pacific's Brief, 3:5-6   The court noted that on order sheets which sent back and forth between buyer and seller the week before shipment, Sun Pacific consistently represented that it had more tomatoes to sell (by filling in a pick-up number) than are ultimately reflected in the pack records.  In some circumstances, Sun Pacific noted on these order sheets that they would not likely have the quantities requested by putting in a question mark instead of a pick-up number. See, e.g. Joint Exhibit 8.  However, for many categories, Sun Pacific represented that they would have sufficient quantities even though the later pack records would seem to show that Sun Pacific fell far short.  Based on these discrepancies, the court concluded that the pack records were not sufficiently reliable to show a product shortage in the relevant categories of tomatoes. Doc. 165, FOFCOL, 13:19-21.

Sun Pacific argues that the court misinterpreted the evidence, explaining that the court has a "fundamental misunderstanding of the parties' ordering procedures." Doc. 169, Sun Pacific's Brief, 3:13-14. Sun Pacific asserts "Providing the pick-up numbers simply proved that Sun Pacific placed DiMare's orders in its computer system based upon Sun Paciric's *projected* production, not that it had the actual inventory. Doc. 169, Sun Pacific's Brief, 4:23-25.

First, the court does not find this argument convincing as Sun Pacific put a question mark instead of a pick-up number when it thought the quantities would be insufficient. Sun Pacific asks that the court believe it often overestimated (sometimes grossly overestimated) its actual production 5-11 days before delivery. Second, in looking over the data again, the court has found serious problems with the pack records. For the week of 8/14-8/20, Sun Pacific's pack records show 5,297 boxes of Medium Round 6x7 #1 grade tomatoes, 640 boxes of Medium Round 6x7 #2 grade tomatoes, and 1,160 boxes of Large Round 6x6 #2 grade tomatoes packed. Plaintiff's Exhibit 29, page 14. Mr. Bates, general manager of Sun Pacific, testified that Defendant's Exhibit B was a spreadsheet that represented what was actually supplied to DiMare in the Contract period. Trial Transcript, 175:16-176:2. Sun Pacific also cites to and relies upon Defendant's Exhibit B in this motion. Doc. 169, Sun Pacific's Brief, 11:22-25. For the week of 8/14-8/20, this record shows 6,000 boxes of Medium Round 6x7 #1 grade tomatoes, 960 boxes of Medium Round 6x7 #2 grade tomatoes, and 1,840 boxes of Large Round 6x6 #2 grade tomatoes were delivered to DiMare. Defendant's Exhibit B, page 1. These quantities delivered are greater than the quantities the pack record shows were available. For the week of 8/21-8/27, the pack records show 911 boxes of Medium Round 6x7 #2 grade tomatoes available while 1,120 boxes were actually delivered to DiMare. Plaintiff's Exhibit 29, page 14; Defendant's Exhibit B, page 1. There is nothing in the record that suggests Sun Pacific obtained tomatoes from outside sources to supply DiMare during this period. These tomatoes which were available (and actually delivered) were not reflected in Sun Pacific's pack record. Yet, Sun Pacific asserts that the pack record includes all of what it had available to ship. In fact, Sun Pacific asserts that the pack record included more tomatoes than the quantity available to ship: "*Available to ship* is a small subset of the quantity of tomatoes Sun Pacific Packed because it only includes tomatoes

**4**

that will satisfy the contractual ripeness specifications and are packed by the specified pick-up date." Doc. 175, Sun Pacific's Reply, 3:14-17.  Again, the court must find that "there is contradictory evidence that strongly suggests Sun Pacific had more boxes for sale in certain weeks than the number of boxes packed. Sun Pacific does not explain this discrepancy." Doc. 165, FOFCOL, 13:9-11.  The pack record appears to be either insufficiently explained or unreliable.  Sun Pacific has not provided sufficient evidence to establish a product shortage.

Sun Pacific does point out a mistake in the FOFCOL.  The court stated that "The order sheets for 8/21-8/27 and 8/28-9/3 only show what Mr. Licato requested; it does not show Mr. Gilardi's response....The specific details of how Mr. Gilardi and Mr. Licato negotiated these shipments has not been presented. The parties have not provided Mr. Gilardi's response to these weekly order sheets with pick-up numbers filled in." Doc. 165, FOFCOL, 6:10-12.  The order sheets are found at Joint Exhibit 2.  While that document shows no response for 8/21-8/27, it does show a response (pick-up numbers) for 8/28-9/3.  This mistake does not change the substance of the analysis.  The purpose of pointing out the lack of response was to emphasize the fact that there was no explanation for how the parties arrived at the ultimate quantities shipped.

**B. Savings from Cover**

In the FOFCOL, DiMare was awarded damages based on Cal. Com. Code § 2712(2), which states "The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2715), but less expenses saved in consequence of the seller's breach."  DiMare provided records of its cover purchases when the purchase price was greater than the Contract price.  There were 16 transactions (out of 102) for which DiMare procured tomatoes at or below the Contract prices. Doc. 165, FOFCOL, 19:7-10.  In the absence of any evidence as to the amount saved, the court cut DiMare's recovery by 20%.

DiMare now asks the court to measure the savings using Cal. Com. Code §2713(1), which states "the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the

5

contract price together with any incidental and consequential damages provided in this division (Section 2715), but less expenses saved in consequence of the seller's breach." In the bench trial, the parties did provide some evidence of market prices for various categories of tomatoes. Joint Exhibits 14, 15, and 16. Of the 16 transactions the court found problematic, DiMare has broken them out into 28 (as some of the 16 constituted purchases of more than one category of tomato), accounting for 25,600 boxes of tomatoes. DiMare uses the market price numbers to derive a savings of only $16,000. Doc. 166, Part 1, DiMare Brief, 5:7-25. This figure accounts for all instances when the relevant market price was less than Contract price in September and October 2006.

The evidence presented is problematic. Of the 28 purchases DiMare identified, using the market price showed a savings in only 11 instances. That is, the market price was below the Contract price 11 times. It was equal to the Contract price 3 times. The market price was above the Contract price 14 times out of 28. In those circumstances, the price DiMare paid should have been above the Contract price, giving rise to damages. Yet, DiMare admits it was able to source these tomatoes at or below the Contract prices those 14 times. For example, on October 23, 2006, for Jumbo Round 5x5 tomatoes, the Contract price was $7.95 while the market price was $9.45. Yet, DiMare admits that it was able to source the tomatoes at or below the Contract price notwithstanding the fact that the market price was $1.50 higher. The market price information provided does not accurately reflect the prices DiMare paid; DiMare clearly paid less. While using the market price is an valid means of measuring damages under Cal. Com. Code § 2713, the court is hesitant to use that measure when existing evidence demonstrates that the market price is an inaccurate measurement in this case. Further, the inaccuracies clearly favor the party who has the burden of proof. However, the original estimate of 20% savings was close to a pure guess. DiMare's analysis of the evidence suggests another method.

DiMare identified $16,000 of savings from 25,600 boxes of tomatoes. In order to better estimate the actual savings from this cover, the court will assume an additional savings of $3.00/box. That comes to $76,800. Thus, the court finds an estimate of the savings to total $92,800. DiMare is awarded $1,132,562 ($1,225,362 minus $92,800) in damages.

**C. Prejudgment Interest Rate**

In the FOFCOL, the court awarded a prejudgment interest rate of 2.18%. This was the rate applied by Judge Jenson and requested by DiMare. Doc. 157, DiMare's Proposed FOFCOL, 20:23-28. Sun Pacific sought an interest rate of 10% under Cal. Civ. Code §3289(b). Doc. 158, Sun Pacific's Proposed FOFCOL, 35:2-3. DiMare now seeks an interest rate of 10%.

In the FOFCOL, the court concluded that "The substantive law applied is California commercial law; PACA provides for the forum and procedure." Doc. 165, FOFCOL, 10:26-27. The court admits that this case is a hybrid of sorts, taking from both California and federal law. The court substantively applied California commercial law since that was the main point of contention between the parties. The parties did not dispute that PACA applied. Thus, the question that had to be resolved was who breached the contract. PACA statutory language and jurisprudence would not resolve that issue so the court relied upon California contract law. Ultimately, this court agreed with Judge Jenson's ruling and awarded damages under PACA. As Judge Jenson found, "[Sun Pacific's] failure to perform under its Contract with [DiMare] is a violation of Section 2 of [PACA]. Section 5(a) of [PACA] requires that we award to the person or persons injured by a violation of Section 2 of [PACA] 'the full amount of damages' sustained in consequence of such violations. Such damages include interest." Joint Exhibit 13, Judge Jenson's Ruling, 23. Judge Jenson relied upon UCC precedent to determine that Sun Pacific breached the Contract. California had adopted all the relevant UCC provisions without change. This court relied upon California case law and law from other states that had identical UCC language to resolve the issue. Further, as Sun Pacific points out, DiMare is seeking attorney's fees and costs under PACA, further supporting the conclusion that this is a PACA case at heart.

In a PACA suit, federal law applies to the awarding of interest. See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1072 (2nd Cir. 1995); Country Best v. Christopher Ranch, 361 F.3d 629, 633 (11th Cir. 2004) (interest to be awarded as with "sums owing in connection with" the transactions). The Ninth Circuit has found that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary." Middle

Mountain Land and Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1226 (9th Cir. 2002).  In this case, the 2.18% prescribed by Judge Jenson is reasonable to protect the interests of PACA complainant DiMare.  Postjudgment interest must be determined in accord with 28 U.S.C. § 1961.

**D. Attorney's Fees and Costs**

Sun Pacific does not dispute that DiMare is entitled to attorney's fees, but disputes the amount requested ($282,766) on two points.  First, Sun Pacific points out the DiMare has not provided evidence of the prevailing hourly rates charged by practitioners of comparable experience in Fresno.  Second, Sun Pacific opposes the request for attorney's fees for time spent on the motion for attorney's fees and costs itself.

DiMare seeks recompense for Stephen McCarron's work at the rate of $350/hour.  He has been specializing in PACA law for thirty years and spent two years as a staff attorney with the Office of General Counsel in the USDA's PACA division.  DiMare seeks recompense for Louis Diess's work at $300/hour.  He has also been specializing in PACA law for the past twenty years.  DiMare seeks recompense for Maria Simon's work at the rate of $265/hour.  She has been working on PACA cases for the past five years.  DiMare has provided no affidavits from local attorneys attesting that these rates are acceptable for the Fresno legal market.  PACA law is a specialized field with relatively few practitioners.  In researching other PACA cases in Fresno, Sun Pacific's and DiMare's attorneys were sometimes involved though they are based on the East Coast.  In 2007, Mr. McCarron and Mr. Diess worked on a PACA case heard by Judge Lawrence O'Neill; they charged $350/hour and $300/hour while an associate with three years of PACA experience charged $250/hour. Chiquita Fresh v. Pandol Associates Marketing, Civ. Case No. 07-1305, Doc 38, Part 1.  Judge O'Neill approved those attorney's fees as part of a settlement between the parties, though he technically did not analyze them for reasonableness under the standard lodestar framework. Doc. 40.  In 2008, Sun Pacific's attorney, Lawrence Meuers, who had eighteen years of PACA experience at the time, requested compensation at $350/hour; Judge Oliver Wanger approved of that rate. Grimmway Enters. v. PIC Fresh Global,

8

Inc., 548 F. Supp. 2d 840, 851 (E.D. Cal. 2008); Civ. Case No. 07-0109, Doc. 42, Part 1. Based on these cases and the court's own experience, the billing rates requested are found to be reasonable.

DiMare seeks $9,626 for the time spent preparing the attorney's fees and cost motion. Sun Pacific argues that this category of attorney's fees is not recoverable under PACA. Whether such fees are allowed depends upon the specific attorney's fees statute. See Identity Arts v. Best Buy Enterprise Services Inc., 2008 WL 820674, *8 (N.D. Cal. 2008) ("While other federal statutes-e.g., 42 U.S.C. § 1988, 28 U.S.C. § 2412-have been construed to permit the recovery of fees upon fees, defendants have not submitted any controlling authority regarding the availability of fees upon fees vis-a-vis the Copyright Act specifically. Accordingly, the court declines to award such fees"). In this case, DiMare seeks attorney's fees under 7 U.S.C. § 499g(c): "if appellee prevails he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of this costs." The Ninth Circuit has stated generally that "Courts have awarded attorneys compensation in statutory fee award cases for time spent in preparing the fee application as well as in actually litigating the amount of the fee....We recognize that there are certain fee award cases in which federal courts have held that attorneys are not entitled to receive compensation for time spent in fee litigation. Those are primarily, if not exclusively, cases in which attorneys' fees are not authorized by statute but an attorney has benefited an entire class of litigants....it is clear that the principal concerns that have prompted courts to refuse to award compensation for time devoted to fee litigation in common fund cases are inapplicable to cases in which fees are authorized by statute." In re Nucorp Energy, Inc., 764 F.2d 655, 661 (9th Cir. 1985). Thus, contrary to the language of Identity Arts, the default rule for statutory attorney's fees appears to be to allow this category of recovery unless there is contrary case law. The court can find no case denying attorney's fees for fee motions under PACA.

Sun Pacific objects to a number of costs claimed by DiMare, arguing they go beyond that which is permitted under 28 U.S.C. § 1920. Doc. 171, Sun Pacific's Opposition, 4:8-9. DiMare argues that the cost award provisions under PACA supercede the limitations of 28 U.S.C. § 1920. Specifically, DiMare cites to Rank v. Balshy, 590 F. Supp. 787, 803 (M.D. Pa. 1984), which

states "When a statute shifts the typical burden of attorney fees and costs, the traditional limitations of 28 U.S.C. § 1920 do not necessarily apply, particularly in civil rights cases." However, the Third Circuit subsequently found that "unless the statute under which expert witness fees are awarded expressly repeals the limits of sections 1920 and 1821(b), we must defer to legislative fiat," repudiating the relevant holding of Rank. West Virginia Univ. Hosps. v. Casey, 885 F.2d 11, 34 (3rd Cir.1989).  In further support, DiMare points out that in PACA cases, witness travel expenses have been awarded to the prevailing party.  DiMare states that "although these costs are not specifically enumerated under 28 U.S.C. § 1920 and Rule 54, the award of such travel expenses is supported by the fee shifting provision under § 499g(c). Doc. 174, DIMare's Reply, 3:20-22.  DiMare misinterprets 28 U.S.C. § 1920(3) which specifically allows for taxation of costs associated with witnesses.  Local Rule 292(f)(8) states that "per diem, mileage and subsistence for witnesses" under 28 U.S.C. § 1821 are allowable taxable costs.  DiMare has provided no basis for PACA to supercede 28 U.S.C. § 1920.

   DiMare seeks recovery for transcription fees and online legal research totaling $3,082.87. Transcription fees are an accepted taxable cost that Sun Pacific does not contest.  Online legal research can be considered a valid taxable cost. See Hartless v. Clorox Co., 273 F.R.D. 630, 646 (S.D. Cal. 2011); Alvarado v. FedEx Corp., 2011 U.S. Dist. LEXIS 112997, *111 (N.D. Cal. Sept. 30, 2011).  In the alternative, it can be considered properly part of attorney's fees. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2nd Cir. 2004) (consensus among D.C., 7th, and 10th Circuits is that online legal research compensable as part of attorney's fees).

   For witness costs, DiMare has set out amounts for airfare, lodgings, meals, rental car, tolls, and mileage.  These are all categories of costs that are permitted under 28 U.S.C. § 1821. DiMare has provided a receipt for Eric Janke's airline ticket at $561.40. Doc. 167, Part 6, pages 12-13.  The rate appears to be a normal commercial fare and is therefore a taxable cost. 28 U.S.C. § 1821(c)(1).  After flying into Fresno, Eric Janke used a rental car to get around the Fresno area during the trial.  While rental car costs may be permitted in some circumstances, "the use of a rental car for the witness' convenience during his attendance is not within the contemplation of §

1821." <u>Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.</u>, 193 F.R.D. 26, 35 (D.P.R. 2000). The $299.35 request is denied. Actual toll charges ($9 in this case) are also taxable costs. 28 U.S.C. § 1821(c)(3). Sam Licato traveled from Los Angeles to Fresno and back in his own vehicle. DiMare seeks reimbursement for 777 miles at $.50/mile for $388.50. However, that appears to account for travel within Fresno as well. The distance between Los Angeles and Fresno is no more than 250 miles. Title 28 U.S.C. § 1821(c)(2), 5 U.S.C. §5704(a)(1), and the U.S. General Services Administration regulations allow for reimbursement at $.50/mile. DiMare is awarded $250 in mileage. Sam Licato stayed in Fresno for three days, requesting $585.27 for lodging and $75.75 for meals. Erik Janke stayed in Fresno for three days, requesting $596.56 for lodging and $299.35 for meals. The amount permitted under 28 U.S.C. § 1821(d), 5 U.S.C. §5702(a)(1), and U.S. General Services Administration regulations is $152/day. Thus, each can only recover $456 for subsistence. However, each is also entitled an attendance fee of $40/day. 28 U.S.C. § 1821(b). So, for lodging and meals, DiMare may recover $576 for each of the two witnesses. The total for witness costs is $1,972.40.

### IV. Order

The Findings of Fact and Conclusions of law are amended as follows.

For contract damages, Sun Pacific shall pay DiMare $1,132,562 with prejudgment interest of 2.18% per annum from November 1, 2006. For attorney's fees and costs before the PACA Hearing, Sun Pacific shall pay DiMare $43,930.97 with prejudgment interest of 2.18% per annum from September 23, 2008. For attorney's fees associated with the bench trial, Sun Pacific shall pay DiMare $282,766. For costs associated with the bench trial, Sun Pacific shall pay DiMare $5,055.27.

IT IS SO ORDERED.

Dated:    September 27, 2012

CHIEF UNITED STATES DISTRICT JUDGE